IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

AHMAD M. AJAJ,                          )
                                        )
                    Plaintiff,          )
                                        )
        vs.                             )       Case No. 14-CV-01245-JPG-RJD
                                        )
UNITED STATES OF AMERICA, et al.        )
                                        )
                                        )
                    Defendants.         )

## UNITED STATES OF AMERICA'S MOTION TO DISMISS COUNTS 1-7 and 9-12, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants, the United States of America, the Federal Bureau of Prisons (BOP)[1], Fozzard, Roal, Hollingsworth, Baney, Parent, Cardona, Irvin, Neumann, Rivas, Patterson, Alexander, Szoke, Winklmeier, and Howard, by and through their attorneys, Steven D. Weinhoeft, United States Attorney for the Southern District of Illinois, and Suzanne M. Garrison, Assistant United States Attorney, move to dismiss Counts 1 through 7 (filed pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971)) and 9 through 12 (filed pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)) of the Third Amended Complaint (Doc. 185) for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56, stating as follows:

## INTRODUCTION

This 2014 lawsuit complains of alleged acts by BOP and its employees during the time-period of May, 1997 to May, 2012, and it has been stalled at the initial pleading stage for four years. (Doc. 185 ¶¶ 35-36).     Currently before the Court is a 12-count Third Amended Complaint filed by appointed counsel naming seventeen defendants.     (Doc. 185).   In a screening Order of

---

[1] BOP has separately moved to dismiss because it is named in the caption, but not in any count.   (Doc. 201).

October 16, 2015 entered over three years ago, Judge Yandle expressed concerns that the statute of limitations barred Plaintiff's claims, but noted that the issue was not ripe for review on screening.   (Doc. 22).     Defendants raised the statute of limitations defense in two prior rounds of dispositive motions. (Doc. 84, 169).    Plaintiff mooted Defendants' dispositive motions through amendment of his complaint, so the Court has not examined the statute of limitations issues in this case on the merits.   In this motion, and for a third time, Defendants challenge the FTCA and *Bivens* counts on statute of limitations grounds[2].

A complaint containing dates which show that a claim is time barred can be dismissed on motion brought under Rule 12(b)(6).   *Nat'l Realty & Inv. Co. v. Zurich Ins. Co.*, No. 86 C 2977, 1987 WL 18912, at *2 (N.D. Ill. Oct. 15, 1987).    This is in part because Fed. R. Civ. P. 9(f) makes allegations of time material for purposes of testing the sufficiency of a complaint.    *Id.*   When the complaint contains sufficient facts to afford an adequate basis for determining the issue of limitations, it may be disposed of on a Rule 12(b)(6) motion to dismiss.    *Baker v. F&F Investments*, 420 F.2d 1191, 1198 (7th Cir. 1970), cert. denied, 400 U.S. 821 (1970).

FTCA and *Bivens* claims have separate exhaustion requirements and statutes of limitations. The FTCA counts are discussed first because a judgment on the FTCA counts serves to bar judgment on the *Bivens* counts.

### THE FTCA COUNTS ARE UNTIMELY

The FTCA counts may be summarized as follows:

| | |
|---|---|
| Count 9: | FTCA Hate Crime based on Fozzard's Use of Force, 720 ILCS 5/12-7.1 |
| Count 10: | FTCA Intentional Infliction of Emotional Distress (IIED) as a result of conduct by all named Defendants |
| Count 11: | FTCA Battery by Fozzard |

---

[2] Defendants have previously moved to dismiss Count 8, filed under the Religious Freedom Restoration Act.   (Doc. 202).   Defendant Roloff is uniquely situated and has previously filed a motion to dismiss for failure to state a claim due to the expiration of the statute of limitations.   (Doc. 203).

Count 12:      FTCA Willful & Wanton Conduct based on conduct of
               Roal, Hollingsworth, Winklmeier, Parent, Baney, Patterson,
               Neumann, Rivas, Szoke, Roloff and Cardona

**Administrative Remedy Process for FTCA Claims**

The FTCA provides that "an action shall not be instituted upon a claim against the United States for money damages" unless the claimant first exhausts administrative remedies.   28 U.S.C. § 2875(a). Additionally, 28 U.S.C. § 2401(b) governs the time limit for commencement of an FTCA suit by dictating that tort claims will be forever barred unless the administrative claim is presented to the agency within two years after such claim accrues.   Once the agency denies a claim by certified or registered mail, a plaintiff has six months to bring suit in federal court. 28 U.S.C. § 2401 (b), 2675 (a).   If the agency does not act on the claim by making final disposition within six months after presentation, the claimant may commence suit anytime thereafter.

For purposes of the FTCA, a party begins an action, thus tolling the jurisdictional statute of limitations, by filing a complaint with the court. *McNeil v. United States*, 964 F.2d 647, 649 (7th Cir.1992), aff'd, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993).    If the complaint is not filed within six months after the notice of final denial, the FTCA statute of limitations runs out and the district court no longer has jurisdiction to hear the case. *Charlton v. United States*, 743 F.2d 557, 558 (7th Cir.1984).

**Counts 9 – FTCA Hate Crime Theory & Count 11 – FTCA Battery Theory
are Untimely**

Paragraphs 26 through 34 of the Third Amended Complaint allege that Defendant Fozzard began harassing and abusing Plaintiff at USP-Florence, a facility in the District of Colorado, during the time period of May, 1997 to January, 2010[3].   (Doc. 185).   Plaintiff incorporates all of these paragraphs by reference into each of the twelve counts.    Presumably then, it is Plaintiff's theory

---

[3] Defendants have a pending motion to strike paragraphs 24 through 34 pursuant to Rule 12(f).   (Doc. 200).

that Fozzard's conduct at USP-Florence is actionable in this case and in this District.   The Southern District of Illinois is not the appropriate venue to litigate events occurring in the District of Colorado, so any claim founded upon the conduct alleged in paragraphs 26 through 34 is properly dismissed for lack of venue.   Fed. R. Civ. P. 12(b)(3); 28 U.C.C. § 1391(b).   When a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper." *Best Designs, Inc. v. Am. Sealants Co*., No. 12–1045–DRH, 2013 WL 4516404, at *5 (S.D.Ill. Aug. 26, 2013).

Plaintiff alleges that beginning in approximately September 2011 when Defendant Fozzard began working in Plaintiff's unit at USP-Marion, the harassment and abuse resumed.   (Doc. 185, ¶ 35-26).   Counts 9 and 11 allege that the United States is liable under the FTCA for Correctional Officer Fozzard's "use of force."   In Count 9 Plaintiff incorporates the Illinois Hate Crime Statute, 720 ILCS 5/12-7.1[4], while in Count 11 Plaintiff alleges battery.   Illinois common law battery requires injurious or otherwise offensive physical contact with the victim. *United States v. Watts*, 798 F.3d 650, 652 (7th Cir. 2015).     The Third Amended Complaint references only one instance of use of force by Fozzard, which was said to occur on October 27, 2011.   (Doc. 185, ¶ 48).

Plaintiff filed the instant action on November 3, 2014.   An examination of Plaintiff's administrative tort claims reveals that Counts 9 and 11 are untimely and should be dismissed.   As stated in the Affidavit of Senior Attorney Adviser Tracy Knutson attached as Exhibit 1, BOP housed Plaintiff at USP Marion from January 5, 2010 to May 4, 2012.   On February 24, 2014, BOP received tort claim TRT-NCR-2014-02841.   (Exhibit 1, p. 6; Attachment F).   In conclusory fashion and without reference to any particular occurrence, the tort claim alleges that Fozzard

---

[4] Defendants assume that the portion of the Hate Crimes Statute invoked is subsection (c), as it existed in 2012.

assaulted Plaintiff and continued abusive behavior, harassment, and retaliation "up until April 2012." *Id.* This suit was filed on November 3, 2014, but was postmarked on October 30, 2014. BOP rendered a final agency decision and denied claim TRT-NCR-2014-02841 on June 25, 2014. *Id.*

Plaintiff did not file an administrative tort claim based on the alleged October 27, 2011 assault within two years (or by October 27, 2013). Therefore, Plaintiff did not timely present his tort claim regarding the assault and it is beyond the statute of limitations. Counts 9 and 11 contain assault as an element. Ms. Knutson's affidavit reveals that no other tort claim pertaining to confinement at USP-Marion contains allegations of force or harassment. Counts 9 and 11 should be dismissed.

### Count 10:     FTCA Intentional Infliction of Emotional Distress (IIED) & Count 12:     FTCA Willful & Wanton Conduct

Count 10 broadly alleges that the United States is liable under the FTCA because the conduct of all the Defendants described in the first 139 paragraphs of the Third Amended Complaint amounts to IIED. Under Illinois law, the tort of intentional infliction of emotional distress covers only acts that are truly "outrageous," that is, an " 'unwarranted intrusion ... calculated to cause severe emotional distress to a person of ordinary sensibilities.' " *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). In determining whether defendants' conduct reaches the "extreme and outrageous level," courts consider: (1) "the ... power or control the defendant has over the plaintiff;" (2) "whether the defendant

reasonably believed its objective was legitimate;" and (3) "whether the defendant was aware the plaintiff was 'peculiarly susceptible to emotional distress, by reason of some physical or mental peculiarity.' " *Franciski v. Univ. of Chi. Hosp.*, 338 F.3d 765, 769 (7th Cir. 2003) (quoting *McGrath v. Fahey*, 126 Ill. 2d 78, 88–90 (1998)).   To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. 1993)). Thus, to serve as a basis for recovery, the defendant's conduct must be such that the "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)) (internal quotation marks omitted). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case.   *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).

Count 12 asserts a claim for willful and wanton misconduct, and references the first 147 paragraphs of the Third Amended Complaint.   Count 12 omits reference to the acts of Defendants Fozzard, Irvin, Alexander, and Howard and focuses on the conduct of Roal (who is named in Counts 2-8); Hollingsworth (who is named in Counts 3, 6 and 8); Winklmeier (who is named in Counts 5-8);   Parent (who is named in Counts 2, 3, 4, 7 and 8);   Baney (who is named in Counts 2-4 and 7-8);   Patterson (who is named in Count 7), Neumann, Rivas and Cardona (who are named in Counts 3, 4, and 6-8); Szoke (who is named in Counts 4-8); and Roloff (who is named in Counts 3 and 8).   To state a claim under Illinois law for willful and wanton misconduct, a plaintiff must plead facts establishing the elements of a negligence claim—duty, breach, proximate causation, and harm—and "either a deliberate

intention to harm or an utter indifference to or conscious disregard for the welfare of the Plaintiff." *Kirwan v. Lincolnshire–Riverwoods Fire Protection Dist.*, 811 N.E.2d 1259, 1263 (Ill. App. Ct. 2004) (quoting *Adkins v. Sarah Bush Lincoln Health Ctr*., 544 N.E.2d 733, 743 (Ill. 1989)). Reckless willful and wanton misconduct is conduct committed with an utter indifference of or a conscious disregard for the safety of others. *Kirwan,* 811 N.E.2d at 1263. To meet this standard, the defendant "must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury." *Id.*

Looking at Ms. Knutson's summary of administrative tort claims in Exhibit 1, to the extent any administrative tort claim could possibly encompass conduct by Roal, Holingsworth, Winklmeier, Parent, Baney, Patterson, Newman, Rivas, Cardona, Szoke and Roloff, Plaintiff did not file suit within two years of the denial of his administrative claim.

BOP denied TRT-NCR-2010-04273, which complained of neglect by the medical staff, on November 18, 2010.   This suit was filed in October, 2014, more than two years beyond November 18, 2010.   Nothing in that administrative tort claim serves to exhaust any of the claims in this case.   TRT-NCR-2013-07608 pertained to losses of boxes of personal property during facility transfers, so nothing in that administrative tort claim serves as exhaustion of the claims in this case, none of which relate to property loss.

### Any Medical Malpractice Theory is Subject to Dismissal as Untimely and Due to a Lack of a Medical Certificate of Merit

Plaintiff filed TRT-NR 2014-05658 on July 25, 2014 and he filed TRT-NR-2014-05711 on July 28, 2014.   Both tort claims pertained to medical care.   These tort claims could not preserve any remedies for any conduct occurring before July, 2012 because claims must be filed within two years of accrual.   Plaintiff was transferred from USP-Marion in May,

7

2012, so TRT-NR 2014-05658 and TRT-NR-2014-05711 do not preserve any claims accruing at USP-Marion.

Plaintiff filed TRT-NCR-2014-10750 and TRT-NCR-2014-01751 on December 27, 2013, complaining of medical care and an alleged "pattern of violations" which lasted until May 3, 2012 and which included his transfer to ADX-Florence.     These tort claims could not preserve any remedies for any conduct occurring before December 27, 2011 because claims must be filed within two years of accrual.

To the extent the Third Amended Complaint invokes the FTCA in Counts 10 and 12 and alleges that BOP personnel did not appropriately treat his medical conditions, Plaintiff is actually advancing a medical malpractice claim.    Any such FTCA claim fails because he has not filed a medical certificate to support a medical malpractice theory as required by 735 ILCS 5/2-622.    Section 2-622 provides, in part: "In any action, whether in tort, contract, or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical malpractice, hospital, or other healing art malpractice, the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit from a medical professional indicating that the case has merit.    A written report by the certifying medical professional must be attached to the affidavit and must comply with Section 2-622(a), "clearly identifying . . . the reasons for the reviewing health professional's determination that a reasonable and meritorious" case exists.    Compliance with Section 2-622 is mandatory, and failure to file the affidavit and written report is cause for dismissal.    See 735 ILCS 5/2-622(g).

FTCA claims are governed by the substantive law of the state in which the alleged tort occurred, in this case Illinois.    See 28 U.S.C. §§ 1346(b), 2674; see also *Murrey v. United States*, 73 F.3d 1448, 1453 (7th Cir. 1996).    The prevailing rule in this Court is that the

8

Section 2-622 certificate of merit requirement is a substantive rule of Illinois law that applies to claims brought in federal court.   *See Snargrass v. United States of America*, No. 12-cv-01292-MJR, 2013 WL 5399985, at *2 (S.D. Ill. Sept. 26, 2013) (dismissing federal inmate's FTCA claim alleging medical malpractice due to his failure to attach a 2-622 certificate of merit); *Pyles v. Fahim*, No. 11-cv-378-MJR, 2013 WL 1287393, at *2-3 (S.D. Ill. March 26, 2013) (dismissing state inmate's medical malpractice claim due to his failure to attach a 2-622 certificate of merit); *Shank v. United States*, No. 08-CV-214-JPG-PMF, 2008 WL 4671735 (S.D. Ill. Oct. 21, 2008) (dismissing FTCA survival action without prejudice to allow plaintiff to refile with the 2-622 certificate); *Chapman v. Chandra*, No. 06-cv-0651-MJR, 2007 WL 1655799, at *4-5 (S.D. Ill. June 5, 2007) (dismissing inmate's malpractice claim due to failure to attach 2-622 certificate of merit); *Salsman v. United States*, No. 03-CV-0140-MJR, 2005 WL 2001320 (S.D. Ill. Aug. 19, 2005) (dismissing complaint for failure to comply with Section 2-622).   The Court's approach has been based on the Seventh Circuit's implicit approval of the Section 2-622 requirement in a diversity jurisdiction case.   *Sherrod v. Lingle*, 223 F.3d 605, 613-14 (7th Cir. 2000).   Accordingly, to the extent that Counts 10 and 12 are founded upon allegations that Plaintiff received inadequate or inappropriate medical care (the clear import of paragraphs 62-64 and 65-87 of the Third Amended Complaint), Plaintiff is filing a medical malpractice action under the FTCA without a certificate of merit.   Any claims sounding in medical malpractice should be dismissed.

### Plaintiff has Already had an Opportunity to Litigate Tort Theories Regarding the Transfer to ADX-Florence

In the Third Amended Complaint, Plaintiff essentially says that the United States has liability under the FTCA because its employees knew or should have known that he was too unhealthy for ADX-Florence and allegedly played some role in his transfer to that facility despite

their knowledge.   (Doc. 185, ¶¶ 62-64).   Plaintiff's conditions of confinement at ADX-Florence and the accommodation of his medical conditions after his transfer from USP-Marion are already the subject of a lawsuit he filed in the District of Colorado on December 31, 2015.   *Ajaj v. USA et al,* D. Colo. No. 15-cv-02849.   Plaintiff's claims in this action relating to his transfer are duplicative.   In the Colorado case, Plaintiff complains of a lack of medical treatment for a plethora of chronic conditions, failure to provide a medical diet, and discrimination based upon race and ethnicity.   (Doc. 20, 82, D. CO case 15-cv-2849-GPG).

Federal courts may dismiss a suit "for reasons of wise judicial administration whenever it is duplicative of a parallel action already pending in ... federal court." *Serlin v. Arthur Andersen & Co*., 3 F.3d 221, 223 (7th Cir. 1993) (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976)). The determination is discretionary, and district courts are given latitude to exercise that discretion, but generally, a suit will be considered duplicative if the claims, parties, and relief requested do not significantly vary between the actions. *McReynolds v. Merrill Lynch Co. Inc.*, 694 F.3d 873, 888-89 (7th Cir. 2012).   The transfer claims in this case (Count 7, and portions of Count 10 and 12) should be dismissed because they are based on a theory of anticipatory harm which would result from transfer.   There is already a pending case complaining about post-transfer conditions of confinement at ADX-Florence.   The transfer claims in this District are duplicative and should be dismissed.

### The Conduct Described in Counts 10 and 12 is not Sufficiently Egregious as to State a Claim for IIED or Willful and Wanton Conduct

Count 10 (alleging IIED) and Count 12 (alleging willful and wanton conduct) incorporate all previous paragraphs of the Third Amended Complaint by reference.   The allegations of wrongdoing by BOP employees do not state a claim for IIED or willful and wanton conduct because the conduct is not sufficiently outrageous or egregious.   For example, in paragraph 37,

Plaintiff alleges that Fozzard "embarked on a pattern of harassing Arab and Muslim prisoners including plaintiff with harassment, threats, taunts, and mistreatment," that he subjected inmates to "shakedowns" and "deprived them of sleep" and called them derogatory terms.   (Doc. 185, ¶¶ 27, 46-47).   On a single occasion, Plaintiff alleges that Fozzard struck him.   (Doc. 185, ¶ 48). Plaintiff further alleges that his transfer to ADX-Florence was retaliatory.   (Doc. 185, ¶ 55-68).

IIED is a high standard to prove[5].   Fright, horror, grief, shame, humiliation, and worry are insufficient as is feeling "appalled, annoyed, aggravated, disgusted, offended, upset, embarrassed, uncomfortable, belittled and self-conscious." *Cheatham v. City of Chicago*, No. 16 C 3015, 2018 WL 2096373, at *7 (N.D. Ill. May 7, 2018)(citing cases).    In general, severe emotional distress requires some medical treatment." *Id*.   '[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' do not amount to extreme and outrageous conduct...."  *Richards v. U.S. Steel*, 869 F.3d 557, 567 (7th Cir. 2017).

Even assuming that the conduct alleged in the Third Amended Complaint is sufficiently serious to rise to the level of extreme and outrageous, Plaintiff has not adequately alleged that any BOP official had the requisite mental state to inflict serious harm on him.    It is not enough to use the deliberate indifference standard in pleading an IIED claim.  *Hardy v. Rauner*, No. 17-CV-1354-NJR, 2018 WL 1904288, at *9 (S.D. Ill. Apr. 20, 2018).

Plaintiff's claims for willful and wanton conduct are similarly deficient.    Plaintiff has not sufficiently alleged a deliberate intention to harm him or an utter indifference to or conscious

---

[5]  *See*, *See Lopez v. City of Chicago*, 464 F.3d 711, 720-21 (7th Cir. 2006) detainee had viable IIED claim where he alleged that he was chained to a wall for 4 days and only received food and drink once during that time period); *Honaker v. Smith*, 256 F.3d 477, 492-93 (7th Cir. 2001) (setting a fire to burn someone's house down would constitute "extreme and outrageous" conduct); *Williams v. Erickson*, 962 F.Supp.2d 1038, 1043 (N.D. Ill. 2013) (inmate stated viable IIED claim where he alleged that nurse failed to assist him in changing his colostomy bag, causing him to lay in his own feces for four hours).

disregard for his welfare.      Here, by incorporation of each and every paragraph of factual assertions into each and every count, Plaintiff uses the same standard in pleading IIED, willful and wanton conduct, deliberate indifference, and negligence.    Plaintiff does not allege the frequency of the allegedly wrongful conduct or when it occurred, and lack of particularity makes it impossible to conclude that the allegations rise to the level of severity to maintain a claim.    IIED and willful and wanton conduct are not the same thing as negligence, and Plaintiff has failed to state a viable FTCA theory in Counts 10 and 12.

### JUDGMENT FOR THE UNITED STATES ON THE FTCA COUNTS MANDATES DISMISSAL OF THE *BIVENS* CLAIMS

The Third Amended Complaint includes four counts filed pursuant to the FTCA and seven filed pursuant to *Bivens*.    Because the first 108 paragraphs of the Third Amended Complaint are incorporated by reference into each of the twelve counts, there is total overlap between the FTCA and *Bivens* claims.

A judgment against Plaintiff on his FTCA claims bars his *Bivens* claims.    Title 28, United States Code, Section 2676 provides: "The judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." This statute is a judgment bar which preserves sovereign immunity by protecting the United States from defending against separate lawsuits arising from the same conduct. A judgment is "a prerequisite" to the operation of this statute. *Id.* at 822. However, it does not matter whether judgment on a FTCA claim is entered before, simultaneously with, or after judgment on the remaining claim or claims against the government employee or employees. *See, e.g., Manning v. United States*, 546 F.3d 430 (7th Cir.2008) (affirming district court's decision to vacate jury verdict of $6.5 million in damages for plaintiff on his *Bivens* claim

12

where the United States was subsequently granted summary judgment on the related FTCA

claim in the same suit); *Martin v. United States*, No. 2:13-CV-00059-WTL, 2015 WL

4232476, at *5 (S.D. Ind. July 13, 2015), aff'd, 654 F. App'x 235 (7th Cir. 2016).   As argued

above, summary judgment should enter against Plaintiff on his FTCA claims because they are

time-barred.   The judgment bar in section 2676 should then operate to require the dismissal

of the *Bivens* claims.

### THE STATUTE OF LIMITATIONS HAS RUN AS TO THE *BIVENS* CLAIMS (Counts 1 – 7)

The *Bivens* counts may be summarized as follows:

*Bivens* Claim Pleading 8th Amendment Violation (Cruel & Unusual Punishment/Failure To Protect)

Count 1:      Eighth Amendment Cruel and Unusual Punishment (Fozzard)
Count 2:      Eighth Amendment Failure to Protect (Roal, Baney, Parent)


*Bivens* Claim Pleading 8th Amendment Violation (Medical Needs)

Count 5:      Eighth Amendment Deliberate Indifference to Serious Medical Needs (Szoke, Roal, Irvin, Winklemeir)

*Bivens* Claims Arising in a New Context Thus Implicating *Abbasi*[6] (Discrimination Theories)

Count 3:      First Amendment Free Exercise (Roal, Hollingsworth, Baney, Parent, Roloff, Neumann, Fozzard, Rivas, Cardona, Irvin, Howard)
Count 4:      First Amendment Retaliation (Fozzard, Roal, Parent, Baney, Cardona, Neumann, Szoke, Rivas, Alexander, Patterson, Winklmeier, Howard)
Count 6:      Fifth Amendment Equal Protection (Szoke, Fozzard, Rivas, Cardona, Neumann, Hollingsworth, Winklmeier, Roal)
Count 7:      Fifth Amendment Due Process in connection with transfer (Roal, Baney, Parent, Newman, Szoke, Winklmeier, Rivas, Cardona, Patterson, Alexander, Howard)


### Administrative Remedy Process for *Bivens* Claims

The Prison Litigation Reform Act of 1995 ("PLRA") requires prisoners to exhaust

---

[6] Defendants will also move to dismiss under *Ziglar v. Abbasi*, 137 S.Ct. 1843 (S.Ct. 2017) for failure to state a claim in light of the Supreme Court's admonishment about unwarranted expansion of the *Bivens* remedy.

administrative remedies before filing suit in federal court.   42 U.S.C. § 1997e(a).   The law of this Circuit establishes that the inmate must comply with the rules and procedures governing grievances in the particular institution of incarceration, including any time limitations and *all steps* in a multi-step grievance process.   *Marion v. Veltri*, No. 06-CV-0799-MJR, 2009 WL 528927, at *2 (S.D. Ill. Mar. 3, 2009).   Bureau of Prisons regulations provide "a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10.   Prior to filing suit, federal prisoners must exhaust administrative remedies by following the guidelines set by the Bureau of Prisons. See 28 C.F.R. §542.10 et seq.   Generally, an inmate incarcerated in a federal prison must take the following four steps to exhaust his administrative remedies.   An inmate must first file an informal complaint with his counselor or other staff member. 28 C.F.R. § 542.13(a) (inmate with a grievance shall first present issue informally to prison staff).   The administrative remedy process anticipates that inmates will use separate forms for separate claims. *See* 28 C.F.R. § 542.14(c)(2) (indicating that inmates should list only a single complaint "or a reasonable number of closely related issues" on the informal resolution form).   If the inmate is dissatisfied with the response he receives, he must file a BP–9 seeking administrative review with the warden, who has 20 days to respond. See 28 C.F.R. §§ 542.14(a), 542.18.   These first two steps must be performed within 20 days of the incident about which the inmate complains.   *Id.*   An inmate dissatisfied with the warden's disposition of his Request for Administrative Remedy may appeal via a BP-10 within 20 days to the BOP's Regional Director, see 28 C.F.R. § 542.15(a), who has 30 calendar days to respond, see 28 C.F.R. § 542.18, and may appeal via submission of form BP-11 within 30 days from the Regional Director's decision to the BOP's General Counsel, see 28 C.F.R. § 542.15(a), who must respond within 40 days, see 28 C.F.R. § 542.18.   If the inmate does not receive a response within the time allotted

for reply, including extension, the inmate may consider the absence of a response to be a denial at that level. *Id.*   The administrative remedy process requires that inmates will use separate forms for separate claims. 28 C.F.R. § 542.14(c)(2).

### The *Bivens* Claims are Untimely

Although *Bivens* actions do not contain an express statute of limitations, it is well established in the Seventh Circuit that in such actions, like actions brought pursuant to 42 U.S.C. § 1983, the statute of limitations and tolling laws in the state where the alleged injury occurred are applied. *Delgado-Brunet v. Clark*, 93 F.3d 339, 342 (7th Cir. 1996).   Illinois law prescribes that actions for personal injury must be commenced within two years after the cause of action accrued; thus, this case is governed by a two-year statute of limitations period. 735 ILCS § 5/13-202*; see Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998) (citations omitted). Further, pursuant to 735 ILCS 5/13-216, "[w]hen the commencement of an action is stayed by ... statutory prohibition, the time of the continuance of the ... prohibition is not part of the time limited for the commencement of the action" (emphasis added). Because the PLRA requires inmates to exhaust administrative remedies prior to filing suit under § 1983, the Seventh Circuit Court of Appeals has held that a federal court relying on the Illinois statute of limitations in § 1983 cases must toll the limitations period while a prisoner completes the administrative grievance process. See 42 U.S.C. § 1997(e)(a); *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001). This tolling principle is equally applied to *Bivens* actions. *See Delgado*, 93 F.3d at 342.   Due to the requirement that prisoners exhaust administrative remedies prior to filing suit, if a particular grievance was not timely set forth in an administrative claim, and suit was not filed within two years of the denial of that claim, a plaintiff has no valid cause of action as to that grievance.

Ms. Knutson's affidavit summarizes the 416 requests for administrative remedy which Plaintiff filed during his 28 month assignment to USP-Marion.   (Exhibit 1 at 3, Attachment A & B).   To aid the Court in its review of the statute of limitations problems that are fatal to this action, Ms. Knutson has compiled a summary chart the administrative remedy requests (Exhibit 1, Attachment C).   A quick review of the summary charts quite readily reveals that Plaintiff has filed claims outside the two-year statute of limitations.   Looking at the administrative remedy chart and the column "earliest date remedy was deemed exhausted," it is readily apparent that in filing this action on November 3, 2014 Plaintiff did not file suit under *Bivens* within two years of the earliest date the remedy was deemed exhausted.[7]

For example, the alleged assault by Fozzard was the subject of administrative remedy request 664231 submitted on November 9, 2011 (Exhibit 1, Att. D at 88). BOP received the BP-11 on March 12, 2012. (Exhibit 1, Att. A at 26). Plaintiff could have deemed the final appeal denied on May 11, 2012 when he did not receive a response after the passage of 60 days at the Central Office level. 28 C.F.R. § 542.18. Plaintiff exhausted his administrative remedy by May 11, 2012, but the statute of limitations ran on May 11, 2014 before Plaintiff delivered a copy of the Complaint to prison officials for mailing on October 21, 2014. (See Doc. 1-15, original complaint docketed on November 3, 2014).     The complaint was not delivered for mailing until October 21, 2014, which is more than two years past May 11, 2012.   Administrative remedy request 664231 does not mention any pattern of abusive conduct, so the request does not serve to preserve any claim relating to a pattern of abuse ignored by Fozzard's superiors.   Count 2, alleging a failure to protect by Roal, Baney, and Parent is not the subject of any administrative

---

[7] The initial Complaint does not invoke the mailbox rule.   For purposes of calculating the statute of limitations, the Court can look to the postmark, which in this case is October 30, 2014.   *Lockett v. Warden*, No. 3:16CV630-PPS, 2018 WL 1035881, at *5 (N.D. Ind. Feb. 22, 2018)

remedy request and should be dismissed.    Counts 1 through 7 were belatedly filed and should be dismissed.

## RULE 12(b)(6) STANDARDS

A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).   In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Ordinarily, to the extent a motion filed under Rule 12(b)(6) presents matters outside of the pleadings which the Court opts to consider, the Court must treat the motion as one for summary judgment pursuant to Rules 12(d) and 56.   However, in deciding a motion to dismiss, the Court may consider matters in the public record.  *Palay v. United States*, 349 F.3d 418, 425 n. 5 (7th

Cir.2003) (stating that "in resolving a motion to dismiss, the district court is entitled to take judicial notice of matters in the public record"), cited in *Kolodiy v. United States*, No. 11-C-239, 2011 WL 3489934, at *3 (E.D. Wis. Aug. 9, 2011)(Opting to take judicial notice of lack of agency records reflecting exhaustion of administrative remedies as detailed in a declaration, in lieu of converting Rule 12(b)(6) motion into one for summary judgment).

## SUMMARY JUDGMENT STANDARDS

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R.Civ. P. 56(a).  The movant may support the motion by citing to materials in the record, including the depositions, affidavits, and other documents.   Fed. R. Civ. P. 56(c)(1); *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010).   In assessing whether summary judgment is warranted, the court must construe all evidence, as well as the inferences reasonably drawn therefrom, in the light most favorable to the non-moving party.   *Spivey*, 622 F.3d at 822.   Any inference drawn must be reasonable, however, and "[i]nferences that rely upon speculation or conjecture are insufficient."  *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014).

The non-moving party, on the other hand, must respond with facts establishing that there remains a genuine issue for trial.   *Armato*, 766 F.3d at 719.   "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion.  To successfully oppose the motion, the nonmovant must present definite, competent evidence in rebuttal."  *Salvadori v. Franklin School Dist.*, 293 F.3d 989, 996 (7th Cir. 2002).   *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (in order to overcome a properly supported motion for summary judgment, a nonmovant must establish a factual dispute that

materially affects the outcome).   In a nutshell, summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir.1999).

## CONCLUSION

Although genuine issues of material fact would usually preclude summary judgment, under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the issue of exhaustion of administrative remedies should be resolved by the Court.   If there are factual disputes related to exhaustion, the Court should conduct a hearing and make necessary findings prior to ruling on the motion raising failure to exhaust.   *Id*. at 740-42.   "[N]ot every factual issue that arises in the course of a litigation is triable to a jury as a matter of right . . . ."   *Id*. at 741.

On the other hand, if there are no disputes of fact and the issues presented are solely legal questions, then a *Pavey* hearing is not necessary.   Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question."   *Doss v. Gilkey,* 649 F.Supp.2d 905, 912 (S.D.Ill. 2009), cited in *Castro v. Duncan*, 15-CV-556-MJR-SCW, 2016 WL 3071988, at *3 (S.D. Ill. June 1, 2016). This case does not appear to involve issues of fact related to exhaustion and a *Pavey* hearing should not be necessary.   Accordingly, Counts 1 through 7 and 9 through 12 should be dismissed because the statute of limitations has run.

Respectfully submitted,

STEVEN D. WEINHOEFT
United States Attorney

***/S/ Suzanne M. Garrison***
SUZANNE M. GARRISON
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL 62208
Phone:    618-628-3700
FAX:      618-622-3810
E-mail: Suzanne.Garrison@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

AHMAD M. AJAJ,                              )
                                            )
                    Plaintiff,              )
                                            )
        vs.                                 )          Case No. 14-CV-01245-JPG-RJD
                                            )
UNITED STATES OF AMERICA, et al.            )
                                            )
                                            )
                    Defendants.             )

I hereby certify that on November 27, 2018 I electronically filed the foregoing

**UNITED STATES OF AMERICA'S MOTION TO DISMISS COUNTS 1-7 and 9-12, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

with the Clerk of Court using the CM/ECF system to the following registered participants:

Alan S. Mills        alan@uplcchicago.org, eva@uplcchicago.org

Elizabeth Mazur        liz@uplcchicago.org, eva@uplcchicago.org

*s/ Suzanne M. Garrison*
SUZANNE M. GARRISON
Assistant United States Attorney
United States Attorney's Office
Nine Executive Drive
Fairview Heights, Illinois 62208-1344
Phone: (618) 628-3700
Fax:    (618) 622-3810
E-mail: Suzanne.Garrison@usdoj.gov