IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AHMAD M. AJAJ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-CV-01245-JPG-RJD |
| | ) |
| UNITED STATES OF AMERICA, et al. | ) |
| | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OBJECTIONS TO THE
REPORT AND RECOMMENDATION (Doc. 225)**

Defendants[1], by and through their attorneys, Steven D. Weinhoeft, United States Attorney for the Southern District of Illinois, and Suzanne M. Garrison, Assistant United States Attorney, object to the conclusion in the Report and Recommendation ("R&R") that the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, authorizes personal-capacity damages claims against federal officials and object to the recommendation that their motion to dismiss Count 8 pursuant to Fed. R. Civ. P. 12(b)(6) be denied.   (Doc. 202, Doc. 225 at 8).

---

[1] The R&R recommends that Chaplain Roloff's motion to dismiss be granted because the statute of limitations has run as to all claims against him.  (Doc. 203; Doc. 225 at 9).   In an abundance of caution, Roloff joins in the instant objection to the R&R.  Additionally, the Court granted Plaintiff leave to amend to name BOP in the RFRA count, but Plaintiff failed to include BOP in Count 8 of the 4th Amended Complaint, and it is not known whether this was oversight.  (Doc. 201; Doc. 216; Doc. 225 at 5).   Therefore, BOP joins in these objections, though BOP understands the R&R to conclude that it cannot be sued for damages under the RFRA and that Plaintiff does not seek injunctive relief under the RFRA.  To further clarify the record and the number of remaining defendants and claims, it also appears that Plaintiff unintentionally included the United States in the caption to the 4th Amended Complaint because the Court granted him leave to dismiss the FTCA counts and the United States was named in no other count.  (Doc. 217, Doc. 220).

**INTRODUCTION**

The RFRA provides that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless that burden is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000bb-1. Congress also stated its intent "to provide *a claim or defense* to persons whose religious exercise is substantially burdened by government." 42 U.S.C. § 2000bb(b)(2)(emphasis supplied). Accordingly, RFRA provides that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief *against a government*." *Id.* § 2000bb-1(c)(emphasis supplied). RFRA states that "[a]s used in this chapter . . . the term 'government' includes a branch, department, agency, instrumentality, and official (*or other person acting under color of law*) of the United States" or other federal possessions. 42 U.S.C. § 2000bb-2(1)(emphasis supplied). The Supreme Court has held that similar statutory language does not describe personal-capacity suits for money damages. *See Stafford v. Briggs*, 444 U.S. 527, 535-36 (1980) (holding 28 U.S.C. § 1391(e), addressing suits against "an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority," is limited to official-capacity suits). The statute does not define "appropriate relief," though the Supreme Court has held that identical language in RFRA's sister statute is ambiguous and does not authorize damages suits against state governments. *See Sossamon v. Texas*, 563 U.S. 277, 286 (2011).

In concluding that RFRA authorizes a claim for monetary damages against thirteen current and former BOP employees in their individual capacities, the R&R essentially reasons that Plaintiff can bring such a claim because nothing in RFRA rules it out:

> The Seventh Circuit has previously held that the [RFRA] entitles a prisoner to sue a prison official in his individual capacity. *See Mack v. O'Leary*, 80 F.3d 1175, 1177 (7th Cir. 1996),

> *vacated on other grounds by O'Leary v. Mack*, 522 U.S. 801 (1997); *see also Nelson v. Miller*, 570 F.3d 868, 888-89 (7th Cir. 2009) (similar language in the [Religious Land Use and Institutionalized Persons Act ("RLUIPA")] "contemplates individual capacity liability"). While the Seventh Circuit has foreclosed personal money damages for claims under the similarly-worded [RLUIPA], that ruling did not depend on an affirmative limitation in the [RLUIPA], but on the fact that the [RLUIPA] was enacted under Congress' spending power, so allowing state officials to be sued individually for money damages under that Act would raise constitutional problems. *Nelson*, 570 F.3d at 888-89. The [RFRA] does not have the same limitation, as it was not enacted under the Spending Clause and only applies to the federal government. *O'Bryan v. Bureau of Prisons*, 349 F.3d 399, 401 (7th Cir. 2003). Given that point and the fact that the language of the [RFRA] does not foreclose personal money suits, the Court finds that the RFRA permits individual money suits.

(Doc. 225 at 8).

The R&R's analysis was exactly opposite of what the Supreme Court requires. Rather than asking whether anything in RFRA expressly *excludes* monetary damages, the court should have heeded the Supreme Court's clear instruction that damages remedies against government officials should not be create or expanded absent explicit Congressional authorization. *See Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017); *Jesner v. Arab Bank*, 138 S.Ct. 1386, 1402 (2018)(Court lacked authority in an Alien Tort Claim Act suit to impose liability on a foreign corporation without a specific direction from Congress to do so.). RFRA nowhere mentions the term "damages"; Congress's purpose in enacting the statute had nothing to do with creating a damages remedy; and the term "appropriate relief" is too open-ended and ambiguous to clearly signal Congress's intent to subject hundreds of thousands of government officials to potentially ruinous damages liability for claimed RFRA violations.

## DISCUSSION

Nothing in RFRA's text suggests Congress meant to allow anything other than relief against officials or other persons in their official capacities—meaning equitable relief that would halt the unlawful behavior. While RFRA creates an express private right of action, it is one that

3

is ambiguous regarding the availability of damages. Since the Seventh Circuit's *Nelson* decision, the Supreme Court has examined similar language in the RLUIPA, which also provides for "appropriate relief against a government," and has considered whether the phrase authorizes monetary damages. In *Sossamon v. Texas*, the Supreme Court observed that "appropriate relief" is open-ended and ambiguous about what types of relief it includes. 563 U.S. at 286. "Far from clearly identifying money damages, the word 'appropriate' is inherently context-dependent. . ." *Id.* We know from *Sossamon* that this Court must consider RFRA's use of the phrase "appropriate relief" in context. If the "appropriate relief against a government" language in RLUIPA is too ambiguous to signal Congress's intent to include a damages remedy against the state, the same phrase in RFRA is too ambiguous to signal Congress's intent to include a damages remedy against federal officials.

By contrast, Congress has repeatedly demonstrated the ability to expressly authorize a statutory damages remedy when it wants to do so.[2] For example, RFRA may be readily

---

[2] Section 1985's remedial provision authorizes "an action for the recovery of damages." 42 U.S.C. § 1985; see also 18 U.S.C. § 1595 permitting "recover[y]" of "damages and reasonable attorneys fees" against perpetrators of peonage, slavery and trafficking in persons). The Foreign Intelligence Surveillance Act permits the "recovery[] … [of] actual damages … [and] punitive damages." 50 U.S.C. § 1810. The Telecommunication Act specifies that a court "may award damages." 47 U.S.C. § 605(e)(3). Notably, the Federal Wiretap Act provides for "appropriate relief" but then explicitly includes within that term "damages … and punitive damages in appropriate cases." 18 U.S.C. § 2520(b). The Foreign Sovereign Immunities Act authorizes victims of state-sponsored terrorism to recover "money damages" from an official, employee, or agent of a foreign state, and provides that such damages "may include economic damages … and punitive damages." 28 U.S.C. § 1605A(c). The federal RICO statute and the Anti-terrorism Act both specify that an injured party may "recover threefold the damages" sustained from a violation of the statute. 18 U.S.C. § 1964(c); 18 U.S.C. § 2333(a). The Torture Victim Protection Act establishes a private right of action to recover "damages from an individual who engages in torture or extrajudicial killing." P.L. 102-256, March 12, 1992, 106 Stat. 73. Even the antiquated language of 42 U.S.C. § 1983 (the Civil Rights Act of 1871), to which the Second Circuit panel looked as an analog to RFRA, provides that appropriate relief under that statute includes "an action at law, suit in equity, or other proper proceeding for redress," contrasting equitable relief with "an action at law," which is to say, damages. See Teamsters, 494 U.S. at 570 ("Generally, an action for money damages was the

4

contrasted with other statutes where Congress clearly allows individual-capacity damages suits against government officials, e.g., 42 U.S.C. § 1983; 50 U.S.C. §§ 1809-1810 ("damages" against person acting "under color of law"); 18 U.S.C. § 2520 (defining "appropriate relief" to include "damages"). Section 1983, by expressly permitting an "action at law," is clear that damages suits are allowed; and, by expressly stating that "every person" who deprives others of federal rights "shall be liable," makes clear that individual persons may be sued in such a damages suit. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 751 (1999) (§ 1983 "provides . . . for actions at law with damages remedies," as well as other forms of relief). When Congress intends a damages remedy, it provides one expressly.

Here, Plaintiff attempts to sue thirteen BOP employees in their individual capacities based upon their alleged past role in restricting his ability to observe certain religious practices within the confines of a prison. Plaintiff alleges that he has since been transferred to another facility, so the instant suit does not seek injunctive relief. "Separation- of-powers principles" are "central to the analysis" of whether a federal statute allows a damages remedy against individual federal officials. *Abbasi*, 137 S.Ct. at 1857. The Supreme Court has cautioned that new "damages remedies against government officials are disfavored and should not be recognized absent explicit congressional authorization. *Abbasi*, 137 S.Ct. at 1856. *Abbasi* reminds us that "Congress will be explicit if it intends to create a new private cause of action" or "substantive legal liability," particularly for government officials. *Id.* at 1856-57. In light of the separation-of-powers concerns identified in *Abbasi* and *Jesner*, and the Court's repeated instruction that lower courts must not create or expand private remedies absent clear instruction from Congress, this court

---

traditional form of relief offered in the courts of law.") (internal quotation marks and citation omitted).

5

should decline the invitation to read into the statute a remedy that Congress has never expressly authorized.

There are many reasons to believe that Congress did not inadvertently exclude money damages claims from RFRA's remedial scheme. Creating such a remedy "requires an assessment of its impact on governmental operations systemwide." *Abbasi*, 137 S.Ct. at 1858. That impact is significant: damages suits impose "burdens on Government employees who are sued personally," preventing them from "devoting the time and effort required for the proper discharge of their duties" and causing them to "second-guess difficult but necessary decisions" in matters constitutionally committed to the Executive Branch. *Id.* at 1858, 1860-61; accord *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) ("substantial social costs"); *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) (costs include "expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office," and "'dampen[ing] the ardor [of officials] . . . in the unflinching discharge of their duties'"

While the R&R cites *Tanvir v. Tanzin* in support of the conclusion that RFRA authorizes the recovery of monetary damages against federal officers sued in their individual capacities, it should be noted that the Second Circuit denied a petition for rehearing *en banc* in *Tanzir* on February 14, 2019 over vigorous dissents of three Circuit judges, and the issuance of the mandate has been stayed while the Department of Justice determines whether to file a petition for *certiorari*. *Tanvir v. Tanzin*, No. 16-1176, 894 F.3d 449, 463, *pet. for rehearing en banc denied*, 915 F.3d 8-9 (2d Cir. Feb. 14, 2019. The time for filing a petition for writ of certiorari has been extended by the Supreme Court until June 14, 2019. *Tanzin v. Tanvir*, S.Ct. No. 18A1135.

## CONCLUSION

In short, particularly against the background of disfavored damages remedies against

6

individual government officers, and of disfavored judicial creation and expansion of remedies, the lack of a clear-individual capacity damages remedy in RFRA should be read as indicating that Congress did not intend to create one.  The Supreme Court has expressly "abandoned" the approach of "provid[ing] such remedies as are necessary to make effective the congressional purpose expressed by a statute."   *Abbasi*, 137 S. Ct. at 1855-56 (discussing abandoned approach of implying remedies as necessary to effectuate a statute's purpose); *see also, Jesner*, 138 S.Ct. at 1406.  Even recognizing Congress's intent to safeguard the freedom of religion, a damages remedy against federal officers deters those officers from acting as they must to perform their jobs, and therefore undercuts important law-enforcement interests of the United States.  Limiting RFRA's available remedy to injunctive relief adequately protects the liberties Congress sought to shield, and better aligns with both Congress's intent and the Supreme Court's jurisprudence regarding individual-capacity damages suits.

        Respectfully submitted,

        STEVEN D. WEINHOEFT
        United States Attorney

        ***/S/ Suzanne M. Garrison***
        SUZANNE M. GARRISON
        Assistant United States Attorney
        Nine Executive Drive
        Fairview Heights, IL 62208
        Phone:    618-628-3700
        FAX:      618-622-3810
        E-mail: Suzanne.Garrison@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AHMAD M. AJAJ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-CV-01245-JPG-RJD |
| | ) |
| UNITED STATES OF AMERICA, et al. | ) |
| | ) |
| | ) |
| Defendants. | ) |

I hereby certify that on May 15, 2019 I electronically filed the foregoing

**DEFENDANTS' OBJECTIONS TO THE
REPORT AND RECOMMENDATION (Doc. 225)**

with the Clerk of Court using the CM/ECF system to the following registered participants:

Alan S. Mills     alan@uplcchicago.org, eva@uplcchicago.org

Elizabeth Mazur     liz@uplcchicago.org, eva@uplcchicago.org


*s/ Suzanne M. Garrison*
SUZANNE M. GARRISON
Assistant United States Attorney
United States Attorney's Office
Nine Executive Drive
Fairview Heights, Illinois 62208-1344
Phone: (618) 628-3700
Fax:    (618) 622-3810
E-mail: Suzanne.Garrison@usdoj.gov

8