IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AHMAD M. AJAJ,<br>Plaintiff,<br><br>v.<br><br>WENDY ROAL,<br>JEFF BANEY,<br>JOHN PARENT,<br>JEFF IRVIN,<br>GARRETT FOZZARD,<br>DAVID SZOKE, and<br>MIKE WINKLMEIER,<br>Defendants. | Case No. 14–CV–01245–JPG |

## **MEMORANDUM & ORDER**

This is a prisoner civil-rights case. Before the Court is Defendants Wendy Roal, Jeff Baney, John Parent, Jeff Irvin, Garrett Fozzard, David Szoke, and Mike Winklmeier's Motion for Summary Judgment. (Defs.' Mot., ECF No. 204). Magistrate Judge Reona Daly submitted a Report and Recommendation ("R. & R.") suggesting that the Court grant the Motion in part and deny it in part. (R. & R., ECF No. 247). Plaintiff Ahmad M. Ajaj objected. (Obj., ECF No. 249). For the reasons below, the Court **ADOPTS** Magistrate Judge Daly's R. & R. The defendants' Motion for Summary Judgment is therefore **GRANTED IN PART AND DENIED IN PART**.

### I.     PROCEDURAL & FACTUAL HISTORY

In 1994, Ajaj received 240-year prison sentence in the Southern District of New York. *United States v. Salameh*, 856 F. Supp. 781, 782 (S.D.N.Y. 1994). Since then, he has been housed in several correctional facilities across the country. Relevant here is the time he spent at the federal penitentiaries in Florence, Colorado (1994–1998) and Marion, Illinois (2010–2012).

### A. Failure-to-Protect Allegations

According to the Complaint, Ajaj first met Fozzard while incarcerated in Florence. (Fourth Am. Compl. 4, ECF No. 221). Fozzard was a member of a "rogue" group of correctional officers—"the Cowboys"—with a reputation for "depriving inmates . . . of their constitutional rights and physically assaulting them." (*Id.*). While escorting Ajaj to Missouri for cancer treatment in 1997, Fozzard and other members of the Cowboys subjected him to "abusive strip searches," "excessively painful restraints," and other "physical and verbal abuses." (*Id.* at 4–5).

In 2010, Ajaj was transferred to the federal penitentiary in Marion. (*Id.* at 6). Fozzard followed soon after and again worked as a corrections officer in Ajaj's unit. (*Id.*). The abuses continued. (*Id.*). Ajaj made several verbal complaints to other correctional officers, including Roal, Parent, and Baney, but they failed to act. (*Id.* at 7). And in 2011, "Fozzard struck [Ajaj] several times using a combination lock, a shoe, and other objects in [his] cell." (*Id.*).

Two weeks later, Ajaj submitted an Administrative Remedy Request ("Request 664231") to the warden, titled "Assault by Staff," where he described the attack. (Defs.' Mot., Ex. D, at 87, ECF No. 204-5). Although he mentioned that he first met Fozzard in Florence, he did not allege other abuses while in Marion; nor did he reference Roal, Parent, or Baney; nor did he suggest that he complained about Fozzard to prison staff before the attack. (*See id.*).

### B. Deliberate-Indifference Allegations

While in Marion, Ajaj suffered from "severe back pain, lower extremity pain, leg cramping, insomnia, chronic fatigue syndrome, and several gastro-intestinal disorders." (Fourth Am. Compl. 11). Skoke, the penitentiary's clinical director, "accused [Ajaj] of faking his symptoms" and refused to provide medical treatment. (*Id.*). Skoke also denied Ajaj's request to be placed in an air-conditioned unit: since losing a lung to cancer, Ajaj has trouble breathing in high

temperatures. (*Id.* at 12). Again, Skoke "accused [Ajaj] of faking his symptoms and offered no assistance." (*Id.* at 13). Ajaj complained to Roal and Winklmeier, Skoke's supervisors, but they too failed to act. (*Id.* at 12). Roal, Winklmeier, and Irwin also refused to place Ajaj on a special medical diet to remedy his gastrointestinal disorders. (*Id.* at 13). Diagnostic testing later revealed that Ajaj "had been suffering from severe spinal stenosis and several other serious medical conditions." (*Id.* at 12).

### C. Motion for Summary Judgment

Ajaj sued in this Court in 2014. With the aid of counsel, he amended his complaint to include 12 counts against 17 defendants. (Third Am. Compl. 17–23, ECF No. 185). Now, only three counts remain against seven defendants:

- Count 1: Eighth Amendment—Cruel and Unusual Punishment (Fozzard)

- Count 2: Eighth Amendment—Failure to Protect (Roal, Baney, and Parent)

- Count 5: Eighth Amendment—Deliberate Indifference (Szoke, Roal, Irvin, and Winklmeier)

(Mem. & Order 5, ECF No. 230; *see* Fourth Am. Compl. 17–19).[1]

The defendants moved for summary judgment on all counts, and Magistrate Judge Daly recommended that the Court deny summary judgment on Count 1 and grant it on Counts 2 and 5. (R. & R. 11, 13). Ajaj objected to Magistrate Judge Daly's findings that he failed to fully exhaust all administrative remedies on Count 2; and that Count 5 is barred by the two-year statute of limitations. (Obj. 1, 6).

---

[1] The Court notes, however, that it recently granted Ajaj leave to replead Count 8. (Mem. & Order 4, ECF No. 251).

### B. LAW & ANALYSIS

The Court agrees with Magistrate Judge Daly's R. & R. After de novo review of the parts objected to by Ajaj, the Court finds that he failed to fully exhaust all administrative remedies on Count 2: Request 664231 did not refer to any failure to protect, either explicitly or impliedly. Count 5 is also barred by the two-year statute of limitations: continuing violations apply to unlawful acts, not ill effects. Finally, the unobjected portions of the R. & R. are not clearly erroneous.

### A. Legal Standard

When a district court refers a dispositive motion to a magistrate judge, "[t]he magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b). Within 14 days of the magistrate judge issuing an R. & R., a party may "serve and file specific written objections to the proposed findings and recommendations." *Id.* The district judge must then "determine de novo any part of the magistrate judge's disposition that has been properly objected to" and either "accept, reject, or modify the recommended disposition . . . ." *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

"[S]ummary judgment is the 'put up or shut up' moment in the life of a case." *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 612 (7th Cir. 2008). It is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The movant can support his or her motion by "citing to particular parts of materials in the record, including depositions, documents, . . . or other materials . . . ." *Id.* That said, the district judge must construe the evidence in the light most

favorable to the non-movant, "and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B.  Ajaj Did Not Exhaust All Available Administrative Remedies on Count 2

The Prisoner Litigation Reform Act ("PLRA") prohibits prisoners from suing in federal court "with respect to prison conditions . . . or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). But the PLRA "does not delineate the procedures prisoners must follow." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). As it turns out, it depends: "the rules come from the prison grievance systems themselves—state law for state prisons, federal administrative law for federal prisoners." *Id.* In other words, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

For federal prisoners to exhaust their administrative remedies, federal administrative regulations require them to submit "a formal written Administrative Remedy Request" containing "a single complaint or a reasonable number of closely related issues . . . ." 28 C.F.R. § 542.14(c). That said, the regulations do not state what level of detail is required in a Request. And "[w]hen the applicable regulations provide little guidance regarding the required contents of a prison administrative complaint, . . . an inmate's complaint will suffice for exhaustion purposes if it provides notice to the prison of 'the nature of the wrong for which redress is sought.' " *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) (quoting *Strong*, 297 F.3d at 650).

Ajaj argues that because federal administrative law does "not require any degree of factual particularity," Request 664231 was enough to put "[t]he prison administration . . . on notice" of his failure-to-protect claim. For support, he cites *Riccardo v. Rausch*, 375 F.3d 521, 624 (7th Cir.

2004). There, the Seventh Circuit found that a statement in an inmate's Administrative Remedy Request ("The administration don't [sic] do their [sic] job.") put the defendant-officials on notice of a failure-to-protect claim. *Id.* Similarly, Ajaj cites Judge Crabb's decision in *McKinnie v. Heisz*, No. 09–CV–199–BBC, 2009 WL 3245410, at *2 (W.D. Wis. Oct. 7, 2009). There too, the court found that statements in an inmate's Administrative Remedy Request—about how certain inmates "should not have been allowed on the tier . . . in order to protect [him] from potential harm" and that he "want[s] all those responsible to be held accountable"—put the defendant-officials on notice of a failure-to-protect claim. *Id.* Ajaj suggests that this case is like *Riccardo* and *McKinnie*. The Court disagrees.

In *Schillinger*, the Seventh Circuit found that a state prisoner failed to exhaust all available administrative remedies because the complaint that he submitted to the prison was not specific enough. 954 F.3d at 996. The prisoner sued several prison officials for not protecting him from an attack by another inmate. *Id.* The applicable state law stated that "a prisoner must 'clearly identify the issue' in an inmate complaint," but it did not specify "what it takes to satisfy this requirement." *Id.* at 995. The prisoner's complaint mentioned none of the officials by name, nor did it show that any officials "had reason to know in advance that an attack might occur and failed to take appropriate measures to prevent it." *Id.* The Seventh Circuit therefore concluded that even though the inmate gave a thorough description of the incident, he did not put the prison on notice that he intended asserting a failure-to-protect claim. *Id.*

Request 664231 is more like the complaint in *Schillinger* than those in *Riccardo* and *McKinnie*. True enough, it "was well beyond merely 'intelligible,' and gave the prison ample opportunity to review the issue." (Obj. 4). But the issue raised in Request 664231 was Fozzard's assault—not Roal, Baney, or Parent's failure to protect him. Indeed, Request 664231 was titled

"Assault by Staff." It said nothing about Roal, Baney, or Parent; nor did it suggest that he spoke to prison officials about Fozzard's behavior before the assault. Even though Ajaj did not have to mention them by name, he still had to provide enough information to show the nature of the wrong that he wanted addressed: their failure to protect him. And where the complaints in *Riccardo* and *McKinnie* referenced officials not doing their jobs and protection from potential harm, Request 664231 did neither, only addressing Fozzard's attack. What's more, the statements Ajaj made on appeal—that Fozzard "was repeatedly assigned to [his] unit and was allowed to take[] retaliatory actions"—were not raised in Request s664231. The Court therefore agrees with Magistrate Judge Daly's recommendation and grants the defendants' Motion for Summary Judgment on Count 2.

### C. The Statute of Limitations Bars Count 5

There is no statute of limitations in 42 U.S.C. § 1983. Rather, Congress instructed "courts to borrow and apply to all § 1983 claims the one most analogous state statute of limitations." *Owens v. Okure*, 488 U.S. 235, 240–41 (1989); *see* 42 U.S.C. § 1988. This "is generally the applicable state-law period for personal-injury torts." *City of Ranchos Palos Verdes v. Abrams*, 544 U.S. 113, 123 n.5 (2005). Under Illinois law, this period is two years. 735 Ill. Comp. Stat. § 5/13–202 (West 2003).

That said, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). Instead, courts must refer to "common-law tort principles," *id.*, the standard rule being that accrual occurs "when the plaintiff has 'a complete and present cause of action,'" *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)). "For continuing Eighth Amendment violations,

the two-year period starts to run . . . from the date of the last incidence of that violation, not the first. . . . A violation is continuing where 'it would be unreasonable to require or even permit [a prisoner] to sue separately over every incident of the defendant's unlawful conduct.' " *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013) (quoting *Heard v. Sheahan*, 253 316, 318 (7th Cir. 2001)).

Ajaj argues that Magistrate Judge Daly misinterpreted his allegations in Count 5. He contends that the injury inflicted by Szoke, Roal, Irvin, and Winklmeier when they failed to provide him adequate medical care continued beyond his transfer from Marion in 2012. Rather, he suggests that statements they made about him faking his condition made it difficult for him to later receive medical care by other providers. He therefore maintains that the statute of limitations did not accrue "until 2013 to 2014" when he eventually received treatment. The Court disagrees.

It is insufficient that the *effects* of a constitutional violation continued during the limitations period—what matters is whether the defendant *acted* during the period. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (finding that limitations period began accruing when discriminatory act occurred, "even though one of the *effects* . . . did not occur until later") (emphasis added); *Limestone Dev. Corp. v. Vill. of Lemont*, 530 F.3d 797, 805 (7th Cir. 2008); *see also Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014) ("[E]quitable relief from the statutory limitations period is appropriate only where the alleged violation is 'occasioned by continual unlawful acts, not continual ill effects from an original violation.' ") (quoting *Ocean Acres Ltd. v. Dare Cty. Bd. of Health*, 707 F.2d 103, 106 (4th Cir. 1983)); *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008) (O'Connor, J.). In other words, the statute of limitations accrued when Ajaj was transferred from Marion in May 2012, not when he was eventually treated for his medical conditions elsewhere. Because Ajaj did not sue until

October 2014, five months past the statute of limitations, Count 5 is untimely. The Court therefore agrees with Magistrate Judge Daly's recommendation and grants the defendants' Motion for Summary Judgment on Count 5.

### C. CONCLUSION

The Court **ADOPTS** Magistrate Judge Daly's R. & R. The defendants' Motion for Summary Judgment is therefore **GRANTED IN PART AND DENIED IN PART**. Until Ajaj files an amended complaint repleading Count 8, only Count 1 remains.

**IT IS SO ORDERED.**

**Dated: Tuesday, June 23, 2020**

<u>**S/J. Phil Gilbert**</u>
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**