## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **AHMAD M. AJAJ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-01245-JPG** |
| | ) | |
| **GARRETT FOZZARD,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**GILBERT, District Judge:**

This case now focuses on Plaintiff Ahmad Ajaj's Eighth Amendment excessive force claim (Count 1) against Officer Garrett Fozzard brought pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).  In the operative Complaint,[1] Ajaj alleges that Officer Fozzard struck him in the back with an open padlock on October 27, 2011.  (Doc. 221).  This claim survived screening under 28 U.S.C. § 1915A and dismissal under Federal Rules of Civil Procedure 12 and 56.

Officer Fozzard now seeks dismissal of Count 1 pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") based on the United States Supreme Court's decision in *Egbert v. Boule*, 142 S. Ct. 1793 (June 8, 2022).  The Supreme Court clarified in *Egbert* that the implied damages remedy recognized in *Bivens* should not be expanded into any next context if special factors counsel hesitation in doing so, and a court should not imply a cause of action if there is a single rational reason to believe that Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed.  *Id*. at 1805.  In the wake of *Egbert*, Officer Fozzard filed a Supplemental Motion to Dismiss For Failure to State a Claim Due to Intervening Supreme Court Decision ("Supplemental Motion to Dismiss").  (Doc. 292).  Ajaj opposes the

---

[1] The controlling complaint is the Fourth Amended Complaint filed April 16, 2019.  (Doc. 221).

motion.  (Doc. 293).  Because this claim presents a new *Bivens* context and special factors counsel against expansion of the *Bivens* remedy into this new realm post-*Egbert*, the motion shall be **GRANTED** and this claim **DISMISSED**.

**BACKGROUND**

Ahmad Ajaj is a practicing Muslim who is currently in the custody of the Federal Bureau of Prisons ("BOP") and serving a sentence for convictions stemming from his involvement in the 1993 World Trade Center bombing.  *See United States v. Salameh*, 856 F. Supp. 781, 782 (S.D.N.Y.1994).  On November 3, 2014, Ajaj filed this lawsuit against the United States, BOP, and BOP staff for violations of his federal statutory and constitutional rights at numerous federal institutions between May 1997 and May 2012.  In a half dozen complaints (Docs. 1, 18, 146, 185, 221, and 258) filed in as many years, Ajaj asserted claims against the defendants pursuant to *Bivens* (Counts 1 through 7), the Religious Freedom Restoration Act ("RFRA") (Count 8), and the Federal Tort Claims Act ("FTCA") (Counts 9 through 12).  The Fourth Amended Complaint ("FAC") now controls this case and includes all, but the FTCA, claims.[2]

During its protracted lifetime, this matter has been narrowed down to a single Eighth Amendment excessive force claim against Officer Garrett Fozzard.[3]  Ajaj encountered the officer while housed at federal facilities in Florence, Colorado (1994-98) and Marion, Illinois (2010-12). By way of background information, Ajaj alleges that he first met Officer Fozzard in the late 1990s at the United States Penitentiary, Administrative Maximum Facility near Florence, Colorado

---

[2] The Fourth Amended Complaint (Doc. 221) includes those claims brought under *Bivens* (Counts 1 through 7) and RFRA (Count 8), but not the FTCA (Counts 9 through 12).

[3] Counts 2 through 8 have already been dismissed.  (*See* Docs. 230, 255, and 295).  The Court dismissed Counts 3, 4, 6, 7, and 8 with prejudice on August 13, 2019.  (Doc. 230).  All claims against Defendant Roloff were dismissed with prejudice on the same date.  (*Id*. at 5).  Count 2 was subsequently dismissed without prejudice on exhaustion grounds, and Count 5 was dismissed with prejudice on statute of limitations grounds on June 23, 2020.  (Doc. 255).  (*Id*.).  Count 8 was reinstated but dismissed with prejudice on October 3, 2022.  (Doc. 295).  Only Count 1 against Defendant Fozzard survives.  (*Id*.).

2

("ADX-Florence").  (Doc. 221).  Officer Fozzard was part of a "rogue" group of correctional officers referred to as "the Cowboys" and known for "depriving inmates . . . of their constitutional rights and physically assaulting them."  (*Id*.).  These officers allegedly subjected Ajaj to "abusive strip searches," "excessively painful restraints," and "physical and verbal abuses" while escorting him to Missouri for treatment of lung cancer in 1997.  (*Id*. at 4-5).

Court 1 arises from events that occurred fourteen years later at the United States Penitentiary in Marion, Illinois ("USP-Marion").  (Doc. 221, ¶ 48).  Ajaj transferred to USP-Marion in January 2010, and Officer Fozzard transferred there in September 2011.  (*Id*. at ¶¶ 35-38).  The officer was assigned to work in the same unit where Ajaj was housed.  (*Id*.).  He soon began harassing Arab and Muslim inmates.  (*Id*.).  Ajaj made several verbal complaints, but no one intervened to stop the abuse.  (*Id*. at ¶¶ 37-47).  Then, on October 27, 2011, Officer Fozzard "struck [him] several times, using a combination lock, a shoe, and other objects [he threw] in plaintiff's cell."  (*Id*. at ¶ 48).  Ajaj grieved the assault by filing Administrative Remedy Request No. 664231 ("Request No. 664231"), and he claims that this triggered retaliation by staff members.  (Doc. 221, ¶¶ 54-55; Doc. 204-5, pp. 87-89).  Count 1 arises from Officer Fozzard's use of excessive force against Ajaj on October 27, 2011.  (*See* Doc. 221, ¶ 48).

### SUPPLEMENTAL MOTION TO DISMISS (DOC. 292)

Officer Fozzard moved for dismissal of the Eighth Amendment excessive force claim in Count 1 under Rule 12(b)(6) after the United States Supreme Court issued its decision in *Egbert v. Boule*, 142 S. Ct. 1793 (June 8, 2022).  (Doc. 292).  In *Egbert*, the Supreme Court declined to recognize a *Bivens* remedy for a Fourth Amendment excessive force claim and a First Amendment retaliation claim against a Border Patrol Agent, after finding that both claims presented new

3

contexts under *Bivens* and special factors counseled hesitation in expansion of this remedy. *Id.* Officer Fozzard asks this Court to dismiss Count 1 on the same grounds. *Id.*

**RESPONSE**

Ajaj counters that the Eighth Amendment excessive force claim is, at most, a modest extension of the Eighth Amendment claims already recognized by the Supreme Court in *Carlson v. Green*, 446 U.S. 14 (1980), and *Farmer v. Brennan*, 511 U.S. 825 (1994). (Doc. 293). And, Count 1 is not unlike the Eighth Amendment claims allowed to proceed in *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018), and *Hoffman v. Preston*, 26 F4 1059 (9th Cir. Feb. 28, 2022). *Id.* Relying on this authority, Ajaj asks the Court to find that Count 1 presents no new context and that no special factors foreclose the claim here. *Id.*

**APPLICABLE LEGAL STANDARDS**

**A.      Rule 12(b)(6)**

A motion to dismiss filed under Rule 12(b)(6) serves the purpose of deciding the adequacy of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, a complaint must allege enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Plaintiff need not plead detailed factual allegations, but he or she must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 570. When considering a Rule 12(b)(6) motion, the Court must accept well-pleaded facts as true and draw all inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

4

**B.** **Section 1915(e)(2)(B)**

Section 1915(e)(2)(B) invests district judges with authority to spontaneously dismiss defective suits filed by inmates proceeding *in forma pauperis* and "save everyone time and legal expense," if the court determines that the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from suit. *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003); 28 U.S.C. § 1915(e)(2)(B). It explicitly provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

DISCUSSION

Ajaj seeks damages against Officer Fozzard for violating his right to be free from cruel and unusual punishment under the Eighth Amendment and pursuant to *Bivens*. (Doc. 221). A claim brought against a federal officer pursuant to *Bivens* is the federal counterpart to a claim against a state actor under 42 U.S.C. § 1983. However, the two claims are not the same. Congress enacted Section 1983 in order to authorize a suit for money damages against a state actor for constitutional deprivations without creating an analogous statute authorizing a suit for money damages against a federal agent. *Ziglar v. Abbasi*, 582 U.S. 120, 130 (7th Cir. 2017). There is no Congressional authority to award damages against a federal official who violates the Constitution while acting under color of federal law. *Id*. at 130.

*Bivens* was decided against this backdrop. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 392 (1971). In *Bivens*, the Supreme Court enforced a damages remedy against federal narcotics agents who violated the Fourth Amendment prohibition against unreasonable searches

5

and seizures by arresting a man in his home and conducting a search without a warrant or probable cause. *Id*. The Court acknowledged that the Fourth Amendment does not explicitly provide for a damages remedy. *Abbasi*, 582 U.S. at 131 (citing *Bivens*, 403 U.S. at 396-97). At the same time, the Court observed that Congress took no action to foreclose this remedy in "explicit terms," and no "special factors" suggested that the judiciary should "'hesitat[e]' in the face of congressional silence." *Id*. Relying on general principles of federal jurisdiction, the Court concluded that it could authorize a damages remedy and did so in *Bivens*. *Id*. (citing *Bivens*, 403 U.S. at 392; *Bell v. Hood*, 327 U.S. 678, 684 (1946)). The Supreme Court subsequently extended this remedy twice, to a Fifth Amendment due process claim involving gender discrimination in federal employment in *Davis v. Passman*, 442 U.S. 228 (1979), and an Eighth Amendment claim for deliberate indifference to a federal inmate's serious medical need in *Carlson v. Green*, 446 U.S. 14 (1980). These three cases—*Bivens, Davis,* and *Carlson*—represent the only three instances in which the Supreme Court has recognized a damages remedy under the Constitution itself. *Abbasi*, 582 U.S. at 131.

In the four decades since these decisions, the Court has not created any new context for *Bivens* claims or extended this remedy to any new category of defendants. *See Abbasi*, 582 U.S. at 135; *Egbert*, 142 S. Ct. at 1799-1800 (listing cases). The Court has instead cautioned against recognizing implied causes of action in the *Bivens* context and now takes the position that further expansion of this remedy is a disfavored judicial activity. *Id*. In the past six years alone, the Supreme Court has issued three decisions that expressly discourage all further expansion of *Bivens*. *See Abbasi*, 137 S. Ct. at 1857 (2017) (noting that "expanding the *Bivens* remedy is now a disfavored judicial activity "); *Hernandez v. Mesa*, -- U.S. --, 140 S. Ct. at 735, 742-43 (2020) (noting that if its three "*Bivens* cases had been decided today, it is doubtful that we would have

reached the same result"); *Egbert*, 142 S. Ct. at 1802 ("[W]e have come to appreciate more fully the tension between judicially created causes of action and the Constitution's separation of legislative and judicial power.").  The *Egbert* Court most recently emphasized that "creating a cause of action is a legislative endeavor," so "the Judiciary's authority to do so at all is, at best, uncertain." *Egbert*,  142 S. Ct. at 1802-03.

To determine whether a *Bivens* remedy is available for a particular claim going forward, courts must now apply the following analytical framework articulated in *Abbasi*, *Hernandez*, and *Egbert*.  First, the court must determine whether a case presents a new *Bivens* context by asking whether it differs in a meaningful way from previous *Bivens* cases authorized by the Supreme Court.  *Abbasi*, 582 U.S. at 139-40.  Second, if the context is new, the court must consider whether "special factors" counsel hesitation in expanding this remedy into the new context in the absence of congressional action.  *Id*.  If so, the Court must refrain from recognizing the implied damages remedy.  *Id*.

The Supreme Court clarified in *Egbert* that the second part of this analysis essentially boils down to a single question: "whether there is *any* rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Egbert*, 142 S. Ct. at 1805 (quoting *Abbasi*, 582 U.S. at 136).  If there is even a "single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy."  *Id*. at 1803.  In addition, a Court "may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an 'alternative remedial structure.'"  *Id*. at 1804.  Case law makes clear that "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts."  *Egbert*, 142 S. Ct. at 1799.

A.      **New Context**

When considering whether a case presents a new context, a court must ask whether the case is meaningfully different from *Bivens, Davis,* and *Carlson*, the three cases in which the Supreme Court has implied a damages action.  The Supreme Court identified several meaningful differences that signal a new context, including but not limited to: the constitutional right at issue; the rank of the officers involved; the generality or specificity of the official action; the extent of judicial guidance about how an officer should respond to a given problem or emergency; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors not contemplated in prior *Bivens* cases.  *Abbasi*, 582 U.S. at 139-40.

When considering these factors, the Court finds that Count 1 is unlike all three cases previously decided by the Supreme Court.  Ajaj brings an Eighth Amendment excessive force claim against a prison guard who threw objects into his cell striking him in the back  This claim bears little resemblance to *Bivens*, which involved a Fourth Amendment claim alleging a violation of the right to be free from unlawful searches and seizures against Federal Bureau of Narcotics agents. *Bivens*, 403 U.S. at 397 (1971).  Count 1 is obviously different from *Davis*, which involved a Fifth Amendment due process claim arising from discrimination on the basis of sex against a federal employer.  *Davis*, 442 U.S. at 230-31 (1979).  And, contrary to Ajaj's argument, Count 1 does not fit squarely within the confines of *Carlson* simply because both cases involve Eighth Amendment claims arising from a prison official's deliberate indifference to a serious risk of harm to an inmate.  (Doc. 293).

A claim may present a new context even if it springs from the same constitutional provision as a case in which a damage remedy has already been acknowledged by the Supreme Court.

*Hernandez*, 140 S. Ct. at 740.  In *Carlson*, the Court recognized an implied damages remedy for an Eighth Amendment deliberate indifference claim.  *Carlson*, 446 U.S. 14 (1980).  Although grounded in the Eighth Amendment, the medical claim at issue in *Carlson* is different from the excessive force claim here.  *Carlson* involved an Eighth Amendment claim brought by the estate of a prisoner who succumbed to asthma after he was denied medical care in prison, while Count 1 involves an Eighth Amendment claim brought by an inmate who was struck in the back with objects thrown by a prison guard.  The two cases are factually distinct.  Although both claim are governed by the Eighth Amendment, the applicable legal standard is different.  The legal mandates under which the prison officials were operating are also distinct.  These distinctions are sufficient to support this Court's finding that Count 1 presents a new context post-*Egbert*.  *See also Silva v. United States*, 45 F.4th 1134, 1137 (10th Cir. Aug. 1, 2022).

In reaching this conclusion, the Court declines Ajaj's invitation to compare this case to another one decided by the Supreme Court: *Farmer v. Brennan*, 511 U.S. 825 (1994).  *Farmer* involved a federal prisoner's Eighth Amendment failure-to-protect claim against prison officials who did not intervene to stop inmate-on-inmate violence.  *Id*.  The Supreme Court did not address whether it was even recognizing a *Bivens* remedy in *Farmer*.  In fact, the parties did not raise the issue.  The Supreme Court has never included *Farmer* in its discussions of *Bivens* and its progeny, and this fact is not lost on federal courts.  *See, e.g., Tate v. Harmon*, 54 F.4 839, 847 (4th Cir. Dec. 13, 2022) (""[T]he Court has never considered *Farmer* a *Bivens* case when cataloguing *all* of its *Bivens* cases.").  Because *Farmer* is not one of the cases cited by the Supreme Court when discussing *Bivens* and its progeny, this Court will not make any comparisons between *Farmer* and the instant case as part of its "new context" analysis.

This Court likewise declines Ajaj's invitation to draw comparisons between Count 1 and *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018). Bistrian brought an Eighth Amendment claim against prison officials who failed to protect him from other inmates and detained him in a special housing unit as punishment. *Id*. at 83. Drawing parallels between *Bistrian* and *Farmer*, the Court concluded that the Eighth Amendment failure-to-protect claim presented no new context and allowed it to proceed. *Id*. at 90-92. The Third Circuit affirmed this decision. *Id*. However, *Bistrian* was decided before the Supreme Court even issued decisions in *Hernandez* or *Egbert*, and the Third Circuit never reconciled this decision with *Abbasi*.

Finally, the Court finds Ajaj's reliance on *Hoffman v. Preston*, 26 F.4th 1059 (9th Cir. Feb. 28, 2022), misplaced. *Hoffman* involved an Eighth Amendment claim against a correctional officer for putting the prisoner-plaintiff at increased risk of assault by publicly labeling him a snitch and offering inmates a bounty for assaulting him. *Id*. The *Hoffman* court initially held that the claim represented only a modest extension of *Carlson* and that no special factors foreclosed the claim, particularly where the alternative remedies did not adequately redress the alleged harm. *Hoffman*, 26 F.4th at 1065-66. In the wake of *Egbert* (and after Ajaj filed his Reply (Doc. 294)), the Ninth Circuit withdrew this opinion pursuant to supplemental briefing filed in support of a petition for rehearing *en banc*. *Hoffman*, 2022 WL 6685254 at *1 (9th Cir. Oct. 11, 2022). The Ninth Circuit instead held that "[t]he Supreme Court's decision in *Egbert v. Boule* precludes recognizing a *Bivens* remedy for these allegations." *Id*. at *1. The Court reasoned that "Congress has not authorized a damages remedy in this context, and there are 'rational reason[s]' . . . why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints." *Id*. at *1. The *Hoffman* decision now undercuts Ajaj's position.

Based on the foregoing discussion, this Court concludes that the Eighth Amendment excessive force claim at issue is meaningfully different from the three cases where the Supreme Court recognized an implied damages remedy in *Bivens*, *Davis*, and *Egbert*. Having found that Count 1 presents a new context, this Court will next consider whether special factors counsel hesitation in expanding the implied damages remedy into this new realm.

**B.    Special Factors**

When presented with a new context, the Court must consider whether special factors counsel hesitation in expansion of the *Bivens* remedy. *Abbasi*, 582 U.S. at 135-36. This analysis is, in turn, driven by separation-of-powers principles. *Id.* The key question is whether Congress or the courts should decide to provide for a damages remedy. *Id.* According to the Supreme Court, "[t]he answer most often will be Congress." *Id.* at 135. The Supreme Court's decision in *Egbert* establishes that even one "special factor" is enough to foreclose a *Bivens* claim. *Egbert*, 142 S. Ct. at 1805 (quoting *Abbasi*, 582 U.S. at 136).

Here, that factor is the BOP's Administrative Remedy Program. 28 C.F.R. §§ 542.10-15. The program provided BOP inmates, like Ajaj, with an alternative remedial structure for complaints about the conditions of their confinement, including an officer's use of excessive force. *Egbert*, 142 S. Ct. at 1806-07. Ajaj could resort to this process to seek "formal review of an issue relating to any aspect of his[ ] own confinement," 28 U.S.C. § 542.10(a), and bypass individual officers by filing grievances directly with the Regional Director if he had concerns about retaliation, *id.* at § 542.14(d). The Supreme Court in *Egbert* made clear that a court "may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" 142 S. Ct. at 1804 (quoting *Abbasi*, 582 U.S. at 137). If that structure exists, "'that alone,' like any special factor, is reason enough to 'limit the power

11

of the Judiciary to infer a new *Bivens* cause of action.'" *Id.*; *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001).  In this particular case, Ajaj had access to the alternative remedial structure and used it to complain about the incident that occurred on October 27, 2011.[4]

The fact that the BOP's Administrative Remedies Program did not provide Ajaj with the relief he sought does not create a path to relief under *Bivens*.  An alternative remedial structure forecloses a *Bivens* claim even if it "do[es] not provide complete relief."  *Egbert*, 142 S. Ct. at 1804 (quoting *Bush v. Lucas*, 462 U.S. 367, 388 (1983)).  The Supreme Court made clear in *Egbert* that "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration."  *Id.* at 1807.  "[T]he question of whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts."[5]  *Id.*  In light of *Egbert*, this Court finds that the BOP's Administrative Remedy Program forecloses a *Bivens* claim for the allegations against Officer Fozzard in Count 1.

This Court is not in the business of creating new causes of action.  The political branches are better equipped to decide whether "existing remedies should be augmented by the creation of a new judicial remedy."  *Egbert*, 142 S. Ct. at 1804.  The Court must give the legislative branch "utmost deference" when making this decision because the Court is not well-suited to predict the "systemwide consequences of recognizing a cause of action under *Bivens*."  *Id.*  This uncertainty,

---

[4] Defendants produced a copy of Administrative Remedy Request 664231 and related documentation in support of a Motion to Dismiss Counts 1 through 7 and 9 through 12 or, In the Alternative, for Summary Judgment.  (Doc. 204-5, pp. 87-89).  This request was 1 of 416 that Ajaj filed during his 28 months at USP-Marion.  (Doc. 204-1, p. 3).  In Request 664231, Ajaj explained that Officer Fozzard reached through the bars of his cell, removed a combination lock from his locker, and threw the open lock and other objects at his back.  (Doc. 204-5, pp. 87-89).  Ajaj described no other abuse by Officer Fozzard at USP-Marion and mentioned no attempts to alert staff to the attack before it occurred.  (*Id.*).

[5] Here, the threat of an investigation through the BOP's Internal Affairs Office or Department of Justice's Office of the Inspector General could also serve to deter such misconduct.

alone, is a special factor that warrants hesitation in expansion of the implied damages remedy. *Id*. at 1803-04. Accordingly, this Court finds that special factors foreclose relief in Count 1.

Although the Seventh Circuit Court of Appeals has not yet had occasion to consider the impact of *Egbert* on Eighth Amendment claims arising from the use of excessive force or the failure to protect an inmate from its use, other Circuits have declined to extend *Bivens* into this new context given many of the same special factors that are discussed in *Egbert* and here. This Court's decision is consistent with the overwhelming weight of this persuasive authority. *See, e.g., Bulger v. Hurwitz*, -- F.4th --, 2023 WL 2335958 (4th Cir. March 3, 2023) (no *Bivens* remedy available for Eighth Amendment claim brought by estate of inmate for failure to protect inmate from attack and from transfer to a violent facility); *Hower v. Damron*, 2022 WL 16578864, at *3 (6th Cir. 2022) (no *Bivens* remedy available for Eighth Amendment claim against warden who failed to protect federal prisoner from harassment and threats); *Taylor et al. v. Kobayashi*, 2023 WL 2400879 (9th Cir. March 8, 2023) (no *Bivens* relief available for Eighth Amendment claims against warden and correctional officer for failing to train or supervise officer accused of sexually assaulting inmates and for failing to adequately respond to inmates' complaints of sexual assault).

For the reasons discussed herein, this Court now finds that *Bivens* provides no avenue to relief in Count 1 against Officer Fozzard for using excessive force against Ajaj in violation of his Eighth Amendment rights. Defendant's Supplemental Motion to Dismiss shall be granted, and Count 1 shall be dismissed with prejudice in light of the Supreme Court's decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022). Because no other claims remain pending, the entire action shall also be dismissed.

**DISPOSITION**

**IT IS ORDERED** that Defendant Garrett Fozzard's Supplemental Motion to Dismiss for Failure to State a Claim Due to Intervening Supreme Court Decision (Doc. 292) is **GRANTED** under Federal Rule of Civil Procedure 12(b)(6) and/or 28 U.S.C. § 1915(e)(2)(B).   **COUNT 1** against **GARRETT FOZZARD** is **DISMISSED** with prejudice.  Because no other claims remain pending, the entire action is **DISMISSED with prejudice**.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED**.

**DATED: 4/18/2023**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**